IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Massachusetts Elephant & Castle Group, Inc., et al.[1] | : | Case No. |
| | : | |
| Debtors | : | Jointly Administered |

**MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO
SECTIONS 105, 361, 362, AND 363 OF THE BANKRUPTCY CODE (A)
AUTHORIZING USE OF CASH COLLATERAL; (B) GRANTING ADEQUATE
PROTECTION; (C) SCHEDULING A FINAL HEARING PURSUANT TO
BANKRUPTCY RULE 4001; AND (D) GRANTING RELATED RELIEF**

Massachusetts Elephant & Castle Group, Inc., on behalf of itself and affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an Order (the "Interim Order") pursuant to sections 105, 361, 362, and 363 of the Bankruptcy Code (as defined below) (i) authorizing use of cash collateral for the Debtors' secured prepetition lenders (the "Lenders') to the extent such Lenders have an interest in cash collateral as they pertain to any or all of the Debtors; (ii) granting adequate protection to GE Canada Equipment Financing G.P. ("GE CEF"), Fifth Street Finance Corp. ("Fifth Street"), Sysco San Diego, Inc. ("Sysco"), Royal Bank of Canada ("Royal Bank") and Toronto Dominion Bank ("TD Bank") (GE Canada, Fifth Street, Sysco, Royal Bank and TD Bank, collectively, the "Lenders") in the form of replacement liens and other protections described below; (iii) scheduling a final hearing; and (iv) granting related relief. As further set forth below, the Debtors seek authority to use their

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Massachusetts Elephant & Castle Group, Inc. (5090), Elephant and Castle of Pennsylvania, Inc. (9152), E&C Pub, Inc. (4001), Elephant & Castle Inc. (Washington) (3988), Elephant & Castle (Chicago) Corporation (5254), Elephant & Castle East Huron, LLC (8642), E&C Capital, LLC (4895), Elephant & Castle Illinois Corporation (2811), E&C Eye Street, LLC (1803), Elephant & Castle International, Inc. (5294), Elephant & Castle Pratt Street, LLC (7898), Elephant & Castle Group Inc. (no U.S. EIN), Elephant & Castle Canada Inc. (no U.S. EIN), Repechage Investments Limited (no U.S. EIN), Elephant & Castle, Inc. (Texas) (no U.S. EIN). The debtors' corporate offices are located at 50 Congress Street, Suite 900, Boston, MA 02109.

{M0941458.2}

cash and other receipts in the ordinary course of business to satisfy ongoing expenses, including without limitation, amounts needed to pay wages, compensate estate professionals, and satisfy other post-petition expenses. Absent the use of cash collateral, the Debtors will be unable to operate their businesses and their prospects for reorganization will be immediately and irreparably harmed. In further support of the Motion, the Debtors respectfully state as follows:

1.  By the Motion, the Debtors request, pursuant to sections 105, 361, 362, and 363 of chapter 11 of title 11 of the United States Code (the Bankruptcy Code ), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the Bankruptcy Rules ), and Massachusetts Local Bankruptcy Rule ( MLBR ) 4001-2 (a) the authority to use cash collateral and grant adequate protection to the Lenders in the form of replacement liens and the other protections described below and (b) the scheduling of a final hearing (the Final Hearing ) thereon. A proposed Interim Order is attached hereto as Exhibit A.[2]

2.  As set forth below, the Lenders are entitled to receive adequate protection to the extent of any post-petition diminution in value of their interests, to the extent, if any, in the prepetition Collateral and the cash proceeds thereof (the Cash Collateral ) resulting from the Debtors' use of the Cash Collateral during the bankruptcy case pursuant to sections 361, 362, and 363 of the Bankruptcy Code.[3] The Lenders have not consented to the use of the Cash Collateral pursuant to the terms and conditions outlined in the Interim Order. The Debtors intend to seek such consent, to the extent the Lenders have an interest in the Debtors' cash collateral, in advance of the interim hearing on this Motion.

---

[2] Unless stated otherwise, all capitalized terms not defined herein will have the meaning ascribed to such terms in the proposed Interim Order.
[3] As of the Petition Date, the Debtor Elephant &Castle Group, Inc. ("E&C") was borrower and the other Debtors, guarantors (except for Debtor, Elephant & Castle Pratt Street LLC), under a Loan Agreement with GE CEF. The borrower under a Credit Agreement with Fifth Street is Repachange Investments Limited. It also appears that Sysco asserts a security interest in certain assets of debtor, E&C Pub Inc., Royal Bank asserts a security interest in certain assets of the debtor Repachange Investments Limited, and TD Bank assets a security interest in certain assets of the debtor, Elephant & Castle Group, Inc.

{M0941458.2}

3.      In accordance with Bankruptcy Rule 4001 and MLBR 4001-2, below is a summary of the terms of the proposed Interim Order. Any terms that vary from the requirements of MLBR 4001-2(c) are highlighted in bold:

    (a)    <u>Authorization to Use Cash Collateral.</u>

        (i) Subject to the terms and conditions of the Interim Order, and in accordance with the 4-week budget attached to the Interim Order as Exhibit A (the Budget ), the Interim Order will authorize the Debtor to use Cash Collateral in the ordinary course of its business for the period (the Specified Period ) from the Petition Date through the date which is the earlier to occur: (a) an Event of Default (subject to the Debtors' right to obtain further authorization to use Cash Collateral within the Notice Period) or (b) the Final Hearing on the Motion. At the Final Hearing, the Debtors will seek to further extend its use of Cash Collateral to the extent the Debtors deem necessary.

        (ii) The Debtors may use Cash Collateral during the Specified Period, at the times, in the amounts, and for the purposes identified in the Budget (as such may be amended as provided in the Interim Order) subject to the Permitted Variance (as defined below).

    (b)    <u>Adequate Protection.</u>

        (i) The Interim Order provides that, as adequate protection for the Debtors' use of Cash Collateral, the Lenders will receive replacement liens (the Replacement Liens ) pursuant to, and in accordance with Section 361(2) of the Bankruptcy Code, in and to all property of the kind presently securing the Prepetition Obligations owed to the respective Lenders, including property purchased or acquired with the Cash Collateral, together with any proceeds thereof, but excluding causes of action under chapter 5 of the Bankruptcy Code (the Collateral ) to the extent of any post-petition diminution in value of the prepetition Collateral.

        (ii)Notwithstanding the foregoing, the Replacement Liens (a) shall only be recognized to the extent of any post-petition diminution of the value of the prepetition Collateral resulting from the Debtors' use of the Cash Collateral during the bankruptcy case; and (b) shall only attach to and be enforceable against the same types of property, to the same extent, and in the same order of priority as existed immediately prior to the Petition Date.

{M0941458.2}

   (iii) On the third business day of each week following the entry of the Interim Order, the Debtors shall furnish (a) the Lenders and their counsel and (b) any official committee of unsecured creditors appointed in this bankruptcy case and its counsel: (1) a weekly cash report setting forth, in comparative form, the actual results achieved against those projected for the prior week, including the actual cash receipts and disbursements and the variance of the actual results from those estimated in the Budget; and (2) such other documents and information as may be reasonably requested. The Debtors shall also furnish copies of its monthly operating reports as filed with the Office of the United States Trustee.

 (c) <u>Events of Default</u>.

   (i) The Interim Order provides that the occurrence of any of the following events, unless waived by the respective Lenders in writing, will constitute an event of default (collectively, the Events of Default ):

 1. the failure by the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under the Interim Order;

 2. a default by the Debtors after the Petition Date in reporting the information specified in subsection (b)(iii) above, if such default will remain uncured for three (3) days following written notice from the respective Lenders to the Debtors

 3. reversal, vacatur, or modification (without the express prior written consent of the respective Lenders, each in its sole discretion) of the Interim Order, other than in accordance with the Final Order; or

 4. dismissal of the case or conversion of the case to a chapter 7 case, or appointment of a chapter 11 trustee, examiner with enlarged powers, or other responsible person.

 (d) <u>Rights and Remedies Upon Event of Default</u>.

   (i) The Interim Order provides that, upon the occurrence of an Event of Default, the Debtors' authority to use Cash Collateral shall cease if the Debtors do not within five (5) business days thereof (the Notice Period) seek an emergency hearing with the Court and obtain the further use of Cash Collateral.

### Jurisdiction and Venue

4. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C.

{M0941458.2}

§§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, 362, and 363 of the Bankruptcy Code.

## **Background**

5. On June 28, 2011 (the Petition Date ), the Debtors filed a voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Sections 1107(a) and 1108 of the Bankruptcy Code authorize the Debtors to continue to operate their businesses and manage their property as a debtor in possession. Each of the Debtors has filed a Motion for Order Authorizing Joint Administration of Chapter 11 Cases Pursuant to Federal Rule of Bankruptcy Procedure 1015 and MLBR 1015-1 for procedural proposes only under the case of Debtor Massachusetts Elephant & Castle Group, Inc. No trustee or examiner has been appointed in the Debtors' chapter 11 case.

6. Following the filing of the Chapter 11 Cases, Debtor Mass E&C, intends to commence an ancillary proceeding (the "Ancillary Proceeding") under Part IV of the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice (Commercial List). Mass E&C, as the proposed foreign representative for the Debtors in the Ancillary Proceeding, intends to seek recognition of these chapter 11 Cases and certain orders entered in the Chapter 11 Cases. BDO Canada Limited is the proposed court-appointed Information Officer in the Ancillary Proceeding.

7. The Debtors operate and franchise authentic, full-service British style restaurant pubs in the United States and Canada. There are nine debtor owned locations and one franchised location in the United States, in addition to nine debtor-owned locations and one franchised

{M0941458.2}

location in Canada.[4] Each restaurant employs approximately 45 people, 30% of whom work part-time. As of June, 2011, the Debtors employed a total of 866 people (492 in the United States and 374 in Canada). For fiscal year end 2010, the Debtors had an average restaurant volume in the United States and Canada of $2.9 million and $2.3 million, respectively. The Debtors' corporate offices are located in Boston.

8. The Debtors' assets consist primarily of: (i) cash; (ii) inventory; (iii) fixed assets; and (iv) accounts receivable. As of the Petition Date, the Debtors, on a consolidated basis, had approximately $365,000.00 of cash on hand, inventory with a book value of approximately $501,000.00,[5] fixed assets with a book value of approximately $12,758,000.00, and accounts receivable (i.e. short term credit card receivables) of approximately $300,000.00.[6]

9. As of the Petition Date, the Debtor, E&C, owed GE CEF approximately $18,800,000.00 pursuant to the Loan Agreement (the GE CEF Prepetition Obligation). GE CEF asserts, that the GE CEF Obligation is secured by a lien against substantially all of the Debtors' assets. Also, as of the Petition Date, the Debtor RIL owed Fifth Street approximately $3,500,000.00 (the "Fifth Street Prepetition Obligation"). Fifth Street asserts that the Fifth Street Prepetition Obligation is secured by a lien on substantially all of RIL's assets. As of the Petition Date, RIL does not believe it owes any money to Royal Bank, although a lien search appears to indicate that Royal Bank has a filed lien on substantially all of RIL's assets. Also, as of the Petition Date, the Debtor Elephant & Castle Group Inc. does not believe it owes any money to TD Bank, although a lien search appears to indicate that TD Bank has a filed UCC1 on

---

[4] One Debtor (Elephant & Castle (Chicago) Corporation), has a subsidiary that has a joint venture interest in an entity that operates the Elephant & Castle Restaurant in San Francisco. Neither that subsidiary nor the joint venture are debtors.
[5] The consolidated retail value of the Debtors' Petition Date inventory is approximately the same as book value.
[6] These figures are given on a consolidated basis. The Debtors are investigating the extent to which the Lenders have an interest in Cash Collateral, if any, as to each specific debtor.

{M0941458.2}

substantially all of Elephant & Castle Group Inc. assets. Finally, as of the Petition Date, E&C Pub Inc. is not aware of any money (other than ordinary course business as food supplier) owed to Sysco (the "Sysco Prepetition Obligation"), although a lien search appears to indicate that Sysco has a filed UCC1 on substantially all of E&C Pub Inc.'s assets. The GE CEF Prepetition Obligation, the Fifth Street Prepetition Obligation, and the Sysco Prepetition Obligation, collectively should be referred to as the "Prepetition Obligations".

## Relief Requested

10. By the Motion, the Debtors request, pursuant to sections 105, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and MLBR 4001-2, that the Court (a) authorize the Debtors: (i) use of Cash Collateral in the ordinary course of its business, in the amounts and for the purposes set forth in the 4-week Budget attached to the Interim Order and (ii) granting of adequate protection to the respective Lenders in the form of replacement liens and the other protections described above, and (b) schedule the Final Hearing pursuant to Bankruptcy Rule 4001.

11. The expenses identified in the Budget are those incurred in the ordinary course of the Debtors' businesses, which are necessary to maintain the Debtors' operations and, therefore, preserve the value of the Debtors' assets. Further, the Debtors request that it be authorized to exceed, on an aggregate basis, the expenses in the Budget by no more than ten percent (10%) (on an aggregate basis) (the Permitted Variance ) and to apply any unused portion in one week to any subsequent weekly period.

## Basis for Relief

12. Since April 2011, the Debtors have explored the sale of the Debtors as going concerns. Those efforts resulted in the identification of a number of interested parties. Due diligence was conducted with several potential purchasers and expressions of interest have been

received. It is the Debtors' intention to sell their businesses through a Section 363 sale under the United States bankruptcy Code. The Debtors believe that a Section 363 sale as going concerns are in the best interest of the Debtors, their employees, their creditors and other interested parties.

13. Absent authorization from the Court to use the Cash Collateral, the Debtors have no access to unencumbered funds and will have to cease its operations immediately. The use of Cash Collateral will enable the Debtors to maintain the continuity of its operations without disruption, and preserve the integrity and going concern value of the business while the Debtors pursue a 363 sale as a going concern. Specifically, through the use of Cash Collateral, the Debtors will be able to satisfy their ongoing expenses, including amounts needed to pay wages and related benefits and pay all other post-petition obligations as they come due. Without the ability to use Cash Collateral to pay for such expenses, the Debtors will be unable to operate their businesses and will be forced to liquidate, thereby substantially devaluing their assets.

14. For the above reasons, the Debtors have determined, in the exercise of its sound business judgment, that the Debtors require the use of Cash Collateral for the maintenance and preservation of their property, the operation of their business, the payment of expenses attendant thereto, and the payment of the costs and expenses of administering its chapter 11 case, all in compliance with the Budget.

I. **The Use of Cash Collateral is Warranted and Should Be Approved**

15. Under section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless:

(A) each entity that has an interest in such collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363].

{M0941458.2}

11 U.S.C. § 363(c)(2). See also In re LCC Fin. Corp., 2002 WL 31777643, at *2 (Bankr. D. N.H. Nov. 21, 2002) ( Under section 363 of the Bankruptcy Code, the Debtor is not allowed to use cash collateral without the Lender's consent or an order of this Court. Section 363(e) conditions the use of cash collateral on a finding by the Court that the lender . . . is adequately protected. ).

16.     The Debtors intend to seek the consent of the Lender in advance of the interim hearing on this Motion. As set forth above, the Debtors require the immediate use of Cash Collateral to maintain the value of their businesses. Absent use of the Cash Collateral, the Debtors would be forced to close its restaurants immediately, greatly decreasing the value of the Debtors' assets, including the Collateral. If the Debtors are unable to use Cash Collateral, the value of the Lenders' prepetition Collateral would be substantially reduced. The Lenders will be adequately protected through the continuous operation of the business and the resulting increase in the value of the Debtors' assets (which include the prepetition Collateral). Use of Cash Collateral is, therefore, critical to preserve and maintain the Debtors' estates and the possibility for consummation of a successful chapter 11 plan.

## II.     The Proposed Adequate Protection Should Be Approved

17.     The Lenders are entitled to receive adequate protection to the extent of any post-petition diminution in value of their interests in the prepetition Collateral resulting from the Debtors' use of Cash Collateral and the use, sale, or lease of prepetition Collateral pursuant to sections 361, 362, and 363 of the Bankruptcy Code. Pursuant to the Interim Order, as adequate protection, the Lenders will receive replacement liens on the Collateral and the other protections summarized above.

18.     Section 363(e) of the Bankruptcy Code provides that, on request of an entity that has an interest in property used…or proposed to be used…by the [debtor in possession], the

{M0941458.2}

court…will prohibit or condition such use…as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e). The concept of adequate protection is not defined in the Bankruptcy Code, but section 361 of the Bankruptcy Code contains a non-exhaustive list of acceptable forms of adequate protection, including a cash payment or periodic cash payments, additional liens, replacement liens, and the indubitable equivalent of such entity s interest in such property. 11 U.S.C. § 361.

19.    The purpose of adequate protection is to provide a secured creditor the benefit of its bargain while enabling a debtor to use secured property. In re Northeast Chick Servs., Inc., 43 B.R. 326, 332 (Bankr. D. Mass. 1984); see also In re Pawtuxet Valley Prescription & Surgical Ctr., Inc., 2008 WL 1990887, at *2 (Bankr. D. R.I. Mar. 10, 2008) ( It is generally understood that adequate protection relates to maintaining the status quo for the period between filing the petition and before confirmation or rejection of the plan of reorganization).

20.    In considering a request for adequate protection, the court must balance the protection of the creditor against a debtor s need for the use of property to reorganize.

> The concept of adequate protection is based on two contradictory realities. One is that the use of cash collateral is essential to the success of the reorganization. The other is that the use necessarily diminishes the value of the security bargained for by the creditor, and the secured position ought not be allowed to deteriorate.

In re Xinde Int'l, Inc., 13 B.R. 212, 215 (Bankr. D. Mass. 1981). Courts often consider the harm to the debtor s ultimate prospects for reorganization, which reorganization is generally to the benefit of the secured creditors as well as to the debtor, if overly onerous adequate protection requirements are imposed at the beginning of a case. See id. (If the court acts too swiftly and too rigidly in requiring adequate protection, these debtors chance of reorganization may be so severely damaged as to be non-existent. )

{M0941458.2}

21.     The Debtors intend to seek the consent of the Lenders in advance of the interim hearing on this Motion. The proposed adequate protection will protect the interests of the Lenders in the Cash Collateral from any post-petition diminution in value. Accordingly, the proposed adequate protection is fair and reasonable and sufficient to satisfy the requirements of section 363(c)(2) of the Bankruptcy Code.

### III.     **The Interim Approval Should Be Granted**

22.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after the service of such motion. Fed. R. Bankr. P. 4001(b). Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor s estate pending a final hearing. Id.

23.     Pursuant to Bankruptcy Rule 4001(b), the Debtors request that the Court conduct an expedited preliminary hearing on the Motion and (a) authorize the Debtors to use the Cash Collateral in order to (i) maintain and finance the ongoing operations of the Debtors, and (ii) avoid immediate and irreparable harm and prejudice to the Debtors' estate and all parties in interest, and (b) schedule a Final Hearing on the relief requested herein.

### Notice

24.     No trustee, examiner, or creditors committee has been appointed in the Debtor s chapter 11 case. Notice of the Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Massachusetts; (b) GE CEF; (c) Fifth Street; (d) Sysco; (e) Royal Bank; (f) TD Bank; (g) the creditors holding the thirty (30) largest claims against the Debtor s estate; and (h) all known

taxing authorities that have claims against the Debtors. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

### Notice of Final Hearing

25.     The Debtors further respectfully requests that the Court schedule a Final Hearing and authorize the Debtors to serve notice of the entry of the Interim Order and of the Final Hearing, together with a copy of the signed Interim Order and the Motion, on (a) the parties given notice of this Motion; (b) any party which has filed prior to the date of entry of the Interim Order a request for notices with the Court; and (c) counsel for any committee appointed pursuant to section 1102 of the Bankruptcy Code. The Debtors request that the Court approve such notice of the Final Hearing as sufficient notice under Bankruptcy Rule 4001.

### No Prior Request

26.     No prior request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order, in substantially the form attached to the Motion as Exhibit A: (i) authorizing use of Cash Collateral; (ii) granting replacement liens; (iii) scheduling a final hearing; and (iv) granting such other and further relief as is just and proper.

Dated: Boston, Massachusetts
June 28, 2011

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: /s/John G. Loughnane
John G. Loughnane (BBO No.557599
Two International Place, 16th Floor
Boston, MA  02110-2602
Phone: 617-342-6800
Fax:    617-342-6899
E-Mail: jloughnane@eckertseamans.com
Proposed counsel to the Debtors

{M0941458.2}