**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Massachusetts Elephant & Castle Group, Inc., et al.[1] | : | |
| | : | Case No. 11-16155 (HJB) |
| | : | |
| Debtors | : | Jointly Administered |

**APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(a)
AND 328(a) OF THE BANKRUPTCY CODE AND FED.R.BANK.P. 2014(a)
FOR AN ORDER AUTHORIZING THE RETENTION OF BELLMARK
PARTNERS, LLC AS FINANCIAL ADVISORS TO THE DEBTORS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Massachusetts Elephant & Castle Group, Inc., on behalf of itself and affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby applies to this Court (the "Application") for an Order pursuant to Section 327(a) and 328(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 2014(a), authorizing the retention of BellMark Partners, LLC ("BellMark") as financial advisor for the Debtors. In support of this Application, the Debtors submit the Affidavit of David M. Gesmondi in Support of the Application of the Debtors Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Fed.R.Bankr.P. 2014(a) for an Order Authorizing the Retention of BellMark Partners, LLC as Financial Advisor to the Debtors (the "Gesmondi Affidavit") and respectfully represent as follows:

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Massachusetts Elephant & Castle Group, Inc. (5090), Elephant and Castle of Pennsylvania, Inc. (9152), E&C Pub, Inc. (4001), Elephant & Castle Inc. (Washington) (3988), Elephant & Castle (Chicago) Corporation (5254), Elephant & Castle East Huron, LLC (8642), E&C Capital, LLC (4895), Elephant & Castle Illinois Corporation (2811), E&C Eye Street, LLC (1803), Elephant & Castle International, Inc. (5294), Elephant & Castle Pratt Street, LLC (7898), Elephant & Castle Group Inc. (no U.S. EIN), Elephant & Castle Canada Inc. (no U.S. EIN), Repechage Investments Limited (no U.S. EIN), Elephant & Castle, Inc. (Texas) (no U.S. EIN). The debtors' corporate offices are located at 50 Congress Street, Suite 900, Boston, MA 02109.

{M0945676.1}

**Jurisdiction and Venue**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. Sections 157 and 1334. Venue is proper pursuant to 28 U.S.C. Sections 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. Section 157(b). The statutory predicates for the relief requested herein are Section 327(a) and 328(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2014(a).

**Background**

2. On June 28, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under Chapter 11 of the Bankruptcy Code.

3. The Debtors continue to operate their business and to manage their property as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. On July 12, 2011, the United States Trustee's office appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to Section 1102(a)(1) of the Bankruptcy Code.

5. The Debtors operate and franchise authentic, full-service British style restaurant pubs in the United States and Canada. There are nine debtor owned locations and one franchised location in the United States, in addition to nine debtor owned locations and one franchised location in Canada.[2] Each restaurant employs approximately 40 people, 40% of whom work part-time. Overall, the Debtors employed, as of June, 2011, approximately 866 employees. For fiscal year end 2010, the Debtors had an average restaurant volume in the United States and Canada of $2.9 million and $2.3 million, respectively. The Debtors' corporate offices are located in Boston.

---

[2] One Debtor (Elephant & Castle (Chicago) Corporation), has a subsidiary that has a joint venture interest in an entity that operates the Elephant & Castle Restaurant in San Francisco. Neither that subsidiary nor the joint venture are debtors.

{M0945676.1}

6. Recently, E&C's cash flow available for debt service has been negatively impacted by overall economic conditions impacting sales and restaurant-level profits, capital expenditures required for certain locations, and operating losses associated with certain locations. Available cash resources have been required to pay critical vendors (to ensure the supply of products and services), landlords (to cure defaults and prevent lease terminations), and various tax authorities (to prevent closure and loss of required operating licenses).

7. The events leading up to the Petition Date and certain of the facts and circumstances supporting the relief requested herein are more fully set forth in the Declaration of Keith Radford and Declaration of David Dobbin filed on the Petition Date.

8. Additional facts in support of the specific relief sought herein are set forth in the Gesmondi Affidavit accompanying this Application, as well as below.

## Relief Requested

9. Subject to this Court's approval, the Debtors seek to employ BellMark, as its financial advisor, in connection with the commencement and prosecution of its chapter 11 case and all related matters, effective as of the Petition Date. Pursuant to section 327(a) and 328(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2014(a), the Debtors respectfully requests that the Court enter an order authorizing the Debtors to employ and retain BellMark as their financial advisor to perform consulting and financial advisory services that will be necessary during the chapter 11 case in accordance with the Retention Agreement defined hereinafter (except as may otherwise be set forth herein).

## Qualifications

10. The Debtors bring this Application for the employment of BellMark because of their pressing need to retain a financial advisor and investment banker to assist them in the

{M0945676.1}

critical tasks associated with identifying and negotiating with third parties interested in acquiring the Debtors' businesses or with third parties interested in investing equity into the Debtors.[3]

11. The Debtors are familiar with the professional standing and reputation of BellMark. BellMark is a boutique investment banking firm that provides advisory and investment banking services to middle market and lower middle market companies. In particular, the Debtors understand that BellMark has significant experience with transactions involving restaurants and franchisor/franchisee business models.

12. It is for this reason that prior to the Petition Date, BellMark was engaged by the Debtor, Elephant & Castle Group, Inc., pursuant to the letter agreement dated April 12, 2011 (the "Engagement Letter" attached to the Gesmondi Affidavit as Exhibit A), to act as its exclusive financial advisor in connection with a possible transaction (the "Transaction"). The term "Transaction" is defined in the Engagement Letter as follows:

> For purposes hereof, the term "Transaction" shall mean, whether in one or a series of transactions, (a) any sale, merger, reverse merger, consolidation, capitalization, reorganization or other business combination pursuant to which the stock or assets of the Company or any part thereof, is sold to a third party, or (b) the acquisition directly or indirectly, by at third party of any outstanding capital stock, or all or substantially all of the assets of the Company, by the way of tender or exchange offer, negotiated purchase or otherwise, whether effected, in either case, in one transaction or a series of related transactions or (c) any recapitalization or refinancing, where a debt or equity is used to refinance the Company's debt, and/or to provide working capital to finance the Company's operations or to finance the transaction (the "Transaction").

13. Since its engagement prepetition, BellMark has developed a great deal of knowledge regarding the Debtors' operations, finances and systems. BellMark also prepared offering materials and a data room for prospective investors. To date, BellMark has spoken with

---

[3] The "Debtors' businesses" which are the subject of the "Transaction" as defined below does not include the Debtor, Repechage Investments Limited.

{M0945676.1}

approximately 170 investor groups regarding a potential acquisition of or investment in the Debtors, and has facilitated and participated in a number of conversations and meetings between such investors and the Debtors' management. Prior to the filing, BellMark received written proposals from investors to acquire or invest in the Company. Currently, BellMark is continuing discussions with these investors as well as other parties who have expressed an interest in acquiring or investing in the Debtors since the Chapter 11 filing.

14. The services of BellMark are deemed necessary to enable the Debtors to evaluate and maximize the value of their estates. In view of BellMark's familiarity with the Debtors' businesses and financial affairs and the quality of services provided to date by BellMark, the Debtors believe their retention of BellMark is necessary in order to enable the Debtors to execute faithfully their duties as debtors-in-possession and deal with many of the needs and problems of the Debtors in a most efficient, cost effective, and timely manner. The Debtors accordingly believe that BellMark is well qualified to serve them in these chapter 11 cases and that the retention of BellMark as set forth herein is in the best interests of the Debtors' estates and their creditors.

**Services to be Provided**

15. In accordance with the terms set forth in the Engagement Letter (and as modified by the order approving this Application, the "Retention Agreement"), BellMark will continue to provide such consulting and advisory services as BellMark and the Debtors deem appropriate and feasible in order to advise the Debtors in the course of its chapter 11 case, including but not limited to continue to provide such financial advice and assistance in connection with the Transaction as the Debtors may reasonably request. Such advice and assistance may include identifying and contacting potential acquirers or sources of financing for the Debtors, advising

{M0945676.1}

and assisting the Debtors in evaluating the various structures and forms of any Transaction, assisting in the evaluation of offers, and assisting the Debtors in negotiating the financial aspects of the Transaction.

## Disinterestedness

16. BellMark has informed the Debtors that, except as may be set forth in the Gesmondi Affidavit, it: (a) has no connection with Debtors, their creditors or other parties in interest in this case; (b) does not hold any interest adverse to the Debtors' estates; and (c) believes it is a "disinterested person" as defined within section 101(14) of the Bankruptcy Code.

17. BellMark has informed the Debtors that it will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or hereafter arise, BellMark will supplement its disclosure to the Court.

18. BellMark has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with this case.

19. BellMark is not owed any amounts with respect to its prepetition fees and expenses.[4]

## Terms of Retention

20. As set forth with greater specificity in the Engagement Letter, BellMark is entitled to be compensated for its services as follows:

(a) As consideration for BellMark's services, the Debtors agree to pay BellMark a transaction fee (the "Transaction Fee") of the greater of 2% of the Transaction Value up to and including $25 million; plus 3% of each incremental dollar between $25 million and $30 million; plus 4% of each incremental dollar in excess of $30 million, subject to an overall minimum Transaction Fee of

---

[4] BellMark was owed $2,526.36 in out-of-pocket expenses prior to the Petition Date but agreed to waive the reimbursement of this amount if retained as the financial advisor to the Debtors in these bankruptcy cases in order to assure its disinterestedness.

$350,000.

(b) The terms of the Engagement Letter are modified so that it is understood that BellMark shall only earn a Transaction Fee on whatever final sales price is obtained and thereafter approved by the Court after a stalking-horse bid (which is to be submitted to the Court for approval for BellMark) is subject to a bidding and auction process where other competitive bids are made, provided, however, that if no other competitive bids are made, then the Transaction Fee shall be based on the stalking-horse bid after it has been approved by the Court as the final purchaser.

(c) The terms of the Engagement Letter are further modified to clarify that any Transaction Fee earned by BellMark shall be held from the proceeds of any Transaction for the benefit of BellMark until the Court rules on BellMark's fee application. If such a withholding results in one or more secured creditors not being paid in full from the sale proceeds, such withholding shall be deemed a carve out from the collateral of such secured creditor.

(d) The Debtors agree to reimburse BellMark periodically, upon request, and upon consummation of any Transaction, for all reasonable out-of-pocket expenses incurred in connection with the performance of its duties under the Retention Agreement. Notwithstanding the foregoing BellMark agrees that if out of pocket expenses on the Transaction reach $10,000, it must obtain the Debtors' permission before incurring additional expenses. Such permission will not be unreasonably withheld by the Debtors. BellMark further agrees to use its best efforts to constrain spending to amounts budgeted.

21. In addition, BellMark has requested, and the Debtors agree, to pay to BellMark a monthly set fee amount of $5,000.00 (the "Monthly Fee"), except that the Monthly Fee shall be $10,000.00 for the first month starting from the commencement of these bankruptcy cases.

22. Certain other pertinent provisions of this Retention Agreement include the following:[5]

(a) The Debtors have agreed to indemnify and hold harmless BellMark and its agents from all claims, liabilities, and expenses relating to this engagement. Notwithstanding the foregoing, BellMark shall not be entitled to indemnification, contribution or reimbursement for any claim or expense (i) that is judicially

---

[5] In this paragraph of the Application (as well as the form of Order), the Debtors have inserted language addressing modifications made to the Engagement Letter as it pertains to the indemnification, contribution or reimbursement rights of BellMark. This language comes from the Order Approving the Application of Houlihan Lokey Howard & Zukin Capital as Investment Banker (D.I. #234) in the *In re Arthur B. Little Inc.* bankruptcy, Case No. 02-41045. The Court entered this order on March 5, 2002.

{M0945676.1}

    determined (the determination having become final) to have resulted from the bad faith, self-dealing, breach of fiduciary duty, willful misconduct or gross negligence of BellMark; or (ii) that is settled prior to a judicial determination as to BellMark's bad faith, self-dealing, breach of fiduciary duty, willful misconduct or gross negligence but determined by this Court, after notice and a hearing to be a claim or expense for which BellMark should not receive indemnity, contribution or reimbursement under the terms of this Retention Agreement;

(b) BellMark shall not be entitled to indemnification, contribution or reimbursement for services other than financial advisory and investment banking services provided under this Retention Agreement, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court; and

(c) Certain confidentiality obligations as more fully set forth in the Retention Agreement.

23.    The Debtors believe that the compensation and other provisions set forth in the Retention Agreement provide reasonable terms and conditions of employment in light of (a) industry practice, (b) market rates both in and out of chapter 11 proceedings, (c) BellMark's experience and expertise in reorganizations, and (d) the scope of the work to be performed pursuant to BellMark's retention, and thus, should be approved pursuant to Section 328(a) of the Bankruptcy Code.

**Basis For Relief**

24.    The Debtors are seeking to retain BellMark pursuant to Section 328(a) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 327…on any reasonable terms and conditions of employment, including a retainer…" 11 U.S.C. Section 328(a). Section 328 reflects a significant departure from prior bankruptcy practice relating to the compensation of professionals, as it permits the compensation of professionals, including investment bankers and financial advisors, or more flexible terms that reflect the nature of their services and market conditions. Owing to this inherent flexibility, courts have approved

{M0945676.1}

similar arrangements that contain reasonable terms and conditions under Section 328. The fee structure for this engagement is similar to fee agreements approved by bankruptcy courts throughout the United States under Section 328(a).

25. Furthermore, as described in the Gesmondi Affidavit, to the best of the Debtors' knowledge, BellMark and all of the members of BellMark are "disinterested persons" as that term is defined in Section 101(14) of the Bankruptcy Code, and neither BellMark nor any of the members of BellMark hold any interest materially adverse to the Debtors' estate.

26. As reflected in the Gesmondi Affidavit, BellMark has represented or may represent persons or entities who may have been, may not be, or may become creditors or debtors of the Debtors. Nevertheless, to the best of the Debtors' knowledge, BellMark neither represents nor holds any interest adverse to the Debtors in the matters upon which the Debtors have requested that BellMark be employed.

27. BellMark has agreed not to share with any person or firm the compensation to be paid for services rendered in connection with these chapter 11 cases.

28. Pursuant to Section 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Orders of this Court, BellMark will apply to the Court for the interim and final allowance of compensation and reimbursement of expenses. Because BellMark will be compensated on a fixed monthly fee and certain Transaction Fees, BellMark should not be required to maintain or provide detailed time records in connection with any of its fee applications.

## Notice

29. Notice of this Application has been given, by hand, fax, or overnight mail to: (i) Offices of the United States Trustee for the District of Massachusetts; (ii) counsel to the

{M0945676.1}

Committee; (iii) counsel for the Debtors' known secured creditors, and (iv) anyone requesting notice pursuant to Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### **No Prior Request**

30.    No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in the form annexed hereto, granting the relief requested herein and such other and further relief as is just and proper.

Dated: August 2, 2011

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: /s/ John G. Loughnane
John G. Loughnane (BBO No. 557599)
Two International Place, 16th Floor
Boston, MA  02110-2602
Phone:  617-342-6800
Fax:     617-342-6899
E-Mail:  jloughnane@eckertseamans.com

COUNSEL TO THE DEBTORS

{M0945676.1}