# EXHIBIT A

April 12, 2011

**PERSONAL AND CONFIDENTIAL**

Elephant & Castle Group, Inc.
50 Congress Street, Suite 900
Boston, MA 02109

Attention: Gary J. Heller

  We are pleased to confirm the arrangements under which BellMark Partners LLC ("BellMark"), has today been engaged by Elephant & Castle Group, Inc. (the "Company") to act as its exclusive financial advisor in connection with a possible Transaction (as defined below). This engagement letter supercedes and amends BellMark's existing engagement letter with Terra Nova Pub Group Ltd, (the "TNPG Engagement"), an affiliate of the Company, dated September 6, 2009.

  During the term of its engagement, BellMark will provide such financial advice and assistance in connection with the Transaction as the Company may reasonably request. Such advice and assistance may include identifying and contacting potential acquirers or sources of financing for the Company, advising and assisting the Company in evaluating the various structures and forms of any Transaction, assisting in the evaluation of offers, and assisting the Company in negotiating the financial aspects of the Transaction. For purposes hereof, the term "Transaction" shall mean, whether in one or a series of transactions, (a) any sale, merger, reverse merger, consolidation, recapitalization, reorganization or other business combination pursuant to which the stock or assets of the Company or any part thereof, is sold to a third party, or (b) the acquisition directly or indirectly, by a third party of any outstanding capital stock, or all or substantially all of the assets of the Company, by the way of tender or exchange offer, negotiated purchase or otherwise, whether effected, in either case, in one transaction or a series of related transactions or (c) any recapitalization or refinancing, where a debt or equity is used to refinance the Company's debt, and/or to provide working capital to finance the Company's operations or to finance the transaction (the "Transaction"). Any new or expanded engagement beyond that described above will require BellMark's agreement and may require the parties to enter into additional documentation to reflect such new or expanded engagement.

  For purposes of this letter agreement, the term "<u>Transaction Value</u>" means (i) the total amount of cash paid, directly or indirectly, for the Company (including, without limitation, the total amount of cash deposited in escrow under the terms of any agreement relating to the Transaction); (ii) the fair market value of any assets, securities or other property or rights transferred, directly or indirectly, in payment for the Company (including, without limitation, the present value, as of the closing date of the Transaction, of any payments to be made under non-competition, consulting or similar arrangements and any "earn-outs" or other deferred or contingent payments), except that standard debt instruments will be valued at the face amount thereof; and (iii) the principal amount of any funded indebtedness (including capitalized leases) and any long-term liabilities outstanding immediately prior to the consummation of the Transaction and any other liabilities (contingent or otherwise), in each case, that are directly or

indirectly assumed or refinanced in connection with the Transaction; If, in lieu of receiving all or any portion of the type of consideration payable to the other stockholders of the Company in connection with a Transaction, any stockholder directly or indirectly retains an ownership interest in the Company or directly or indirectly acquires an ownership interest in the corporation or other entity surviving or resulting from the Transaction, the Transaction Value shall be calculated by assuming that such stockholder had sold its entire ownership interest in the Company and received in exchange therefor an amount per share equal to that received by the Company or the other stockholders of the Company, as the case may be, in the Transaction. For purposes of calculating the Transaction Fee, the fair market value of securities for which there is an established trading market will be the closing sale price of the securities on the trading day preceding the date of the closing of the Transaction. The fair market value of any assets, securities, property or rights (other than as provided above) received by the Company will be mutually agreed by BellMark and the Company.

As consideration for BellMark's services, the Company agrees to pay BellMark a transaction fee (the "Transaction Fee") of the greater of 2% of the Transaction Value up to and including $25 million; plus 3% of each incremental dollar between $25 million and $30 million; plus 4% of each incremental dollar in excess of $30 million, subject to an overall minimum Transaction Fee of $350,000.

The Company agrees to reimburse BellMark periodically, upon request, and upon consummation of any Transaction, for all reasonable out-of-pocket expenses incurred in connection with the performance of its duties under this letter agreement. Notwithstanding the foregoing, BellMark agrees that if out of pocket expenses on the Transaction reach $10,000, it must obtain the Company's permission before incurring additional expenses. Such permission will not be unreasonably withheld by the Company. BellMark further agrees to use its best efforts to constrain spending to amounts budgeted.

Notwithstanding the foregoing, the Company agrees to retain BellMark as its financial advisor if a bankruptcy filing becomes necessary and will make any reasonably necessary applications with the bankruptcy court having jurisdiction over the case or cases to seek such court's approval to enter into a post-bankruptcy retention agreement with BellMark on substantially the same terms as this Agreement. BellMark acknowledges that in the event that the Bankruptcy Court approves its retention the aforementioned fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court.

This letter agreement may be terminated with or without cause by BellMark or the Company at any time upon receipt of written notice by the other party to that effect. Upon termination of this letter agreement, neither party will have any liability or continuing obligation to the other, except that: (i) the provisions of Appendix A and Appendix B to this letter agreement will survive any such termination; (ii) the Company will remain liable for BellMark's reasonable out-of-pocket expenses incurred and fees earned up to the time of termination; and (iii) if a Transaction is consummated within 12 months of the termination of BellMark's engagement with any of the parties that were contacted by BellMark, the Company, or any of its officers, directors or affiliates on behalf of the Company during the term of BellMark's engagement, or if a definitive agreement with respect to such a transaction which is subsequently consummated is entered into during such 12-month period, the Company will pay BellMark the

Transaction Fee in accordance with the terms of this letter agreement. For purposes of the preceding clause, upon termination of the engagement BellMark shall provide the Company with list of parties contacted by BellMark, the Company, or any of its officers, directors or affiliates on behalf of the Company during the term of the engagement, and consent to such list will not be unreasonably withheld.

BellMark and the Company agree that the provisions set forth in Appendix A and B attached to this letter agreement form an integral part of this letter agreement and are hereby incorporated by reference in their entirety. Capitalized terms used but not defined in any of the Appendices hereto shall have the meanings assigned to them in this letter agreement. All references in the Appendices hereto to the "letter agreement" shall mean this letter agreement.

If this letter agreement accurately sets forth the understanding between us, please sign the enclosed copy of this letter agreement below and return it to BellMark, at which time this letter agreement will become a mutually binding obligation. We look forward to working with you in this important undertaking.

Very truly yours,

BELLMARK PARTNERS LLC

By: _____
Its: Managing Director


Agreed to as of the above date:

ELEPHANT & CASTLE GROUP, INC

By: _____
Name: _____
Title: _____

Taxpayer Identification Number:

_____

## APPENDIX A: Standard Terms and Conditions

The Company will provide BellMark with the names of all parties with which it has had discussions or contacts concerning a Transaction, and the Company agrees that it and its directors and executive officers will promptly inform BellMark of any inquiry it may receive concerning purchasing or providing financing to the Company.

The Company will provide BellMark (and will request that each prospective purchaser or financier with which the Company enters into negotiations provide BellMark) with such information as BellMark reasonably deems appropriate in connection with its engagement and will provide BellMark with timely access to the Company's officers, directors and advisors. To the best of the Company's knowledge, all such information concerning the Company will be true and accurate in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made. The Company acknowledges that BellMark: (i) will be using and relying upon the accuracy and completeness of the publicly available information or information supplied by or on behalf of the Company and any purchaser or financier in connection with its engagement without independent verification; (ii) does not assume responsibility for the accuracy of any such information and (iii) will not make an appraisal of any assets or liabilities of the Company. The Company also acknowledges and agrees that with respect to any financial forecasts and projections made available to BellMark, it is entitled to assume that such forecasts and projections have been reasonably prepared and reflect the best currently available estimates and judgments of the Company's management.

All opinions and advice (written or oral) given by BellMark to the Company in connection with BellMark's engagement under the letter agreement are intended solely for the benefit and use of the Company and shall be treated as confidential by the Company. The Company acknowledges that BellMark is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction. The Company will consult with its own advisors concerning such matters and is responsible for making its own independent investigation and appraisal of the Transaction. The Company agrees that BellMark may publish, at its own expense, advertisements announcing the completion of the Transaction and BellMark's role therein provided that the Company shall have first reviewed and approved, in writing, any such advertisements. The Company's approval shall not be unreasonably withheld.

The letter agreement may not be amended or modified except in writing and shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of laws.

## APPENDIX B: Indemnification Provisions

The Company agrees to indemnify BellMark, its affiliates, and each of their respective partners, directors, officers, agents, consultants, employees, and controlling persons (within the meaning of the Securities Act of 1933, as amended) (BellMark and each such person or entity are herein after referred to as an "Indemnified Person") from and against any losses, claims, damages, expenses and liabilities or actions in respect thereof (collectively, "Losses"), as they may be incurred (including all reasonable legal fees and other expenses incurred in connection with investigating, preparing, defending, paying, settling or compromising any Losses) to which any of them may become subject and which are related to or arise out of any act, omission, transaction or event contemplated by this Engagement Agreement. The Company will not be responsible under the foregoing provisions with respect to any Losses to the extent that a court of competent jurisdiction shall have determined by a final judgment (or a settlement tantamount thereto) that such Losses resulted primarily from an Indemnified Person's bad faith, willful misconduct or gross negligence. BellMark shall promptly notify the Company of any claim or threatened claim being asserted against BellMark which might give rise to an indemnification or contribution hereunder. The Company may, by written notice to BellMark assume responsibility for the defense and/or settlement of any action, suit, claim or proceeding for which it is required to indemnify an Indemnified Person under this paragraph; provided, however, that the Company shall not, without the written consent of BellMark, enter into any settlement of any action, suit, claim, or proceeding unless such settlement includes (i) an express acknowledgement of no wrongdoing on the part of BellMark or any other Indemnified Person and (ii) a complete release of BellMark and each other Indemnified Person from any and all losses, claims, liabilities, damages and expenses arising in connection with such action, suit, claim or proceeding. So long as the Company is pursuing the defense of any such action, suit, claim or proceeding diligently, no Indemnified Person may settle or compromise any such action, suit, claim or proceeding without the prior written consent of the Company, which shall not be unreasonably withheld.

If the indemnity referred to in the preceding paragraph should be, for any reason whatsoever, unenforceable, unavailable or otherwise insufficient to hold each Indemnified Person harmless, the Company shall pay to or on behalf of each Indemnified Person contributions for Losses so that each Indemnified Person ultimately bears only a portion of such Losses as will reflect: (i) the relative benefits received by each such Indemnified Person, respectively, on the one hand and the Company on the other hand in connection with the Merger Transaction or (ii) if the allocation on the relevant benefits basis is not permitted by applicable law, then the allocation shall be based on both the relative benefits referred to in clause (i) above and the relative fault of each such Indemnified Person, respectively, and the Company as well as any other relevant equitable considerations; provided, however, that in no event shall the aggregate contribution of all Indemnified Persons to all Losses in connection with any Transaction exceed the amount of the fee actually received by BellMark pursuant to this Engagement Agreement. The respective relative benefits received by BellMark and the Company in connection with any Transaction shall be deemed to be in the same proportion as the aggregate fee paid to BellMark in connection with the Transaction.